**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RMS SERVICES-USA, INC.,

Plaintiff,

Case No. 06-15585
Honorable Lawrence P. Zatkoff

v.

TODD HOUSTON, an individual,
DISCOVERY SUPPORT SERVICES, INC.,
a Georgia corporation, and
JAMES JONES, an individual,

Defendants.
______________________________/

**OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION**

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction filed on December 21, 2006. A preliminary injunction hearing was held on January 11, 2007. For the reasons that follow, Plaintiff's Motion for Preliminary Injunction is GRANTED.

## II. BACKGROUND

Defendant Houston began working for Plaintiff in July 2005. Plaintiff provides healthcare information services, and its primary business is long-term off-site storage and management of hospital records. Prior to working for Plaintiff, Houston worked for Smart Document Solutions, a company that provides release of information ("ROI") services. ROI is the process by which hospitals, clinics, and doctors provide medical information to third parties such as insurance companies and attorneys. ROI services are frequently outsourced to companies such as Smart

Document Solutions. ROI services fall into two categories: front-end and back-end. The front-end involves locating the actual records and determining what to release. The back-end involves billing and record distribution.

Houston entered into an employment agreement with Plaintiff that contained a two-year noncompete provision. The provision stated that Houston would not work for a competitor of Plaintiff, or do business with a customer of Plaintiff, unless Houston is engaged in a business that is noncompetitive with Plaintiff.

Plaintiff alleges that Houston became a "secret employee" of Discovery Support Services in August 2006. Discovery is a company that provides ROI services. Plaintiff alleges that either Houston or his wife was placed on Discovery's payroll, and Houston steered ROI business to Discovery. Plaintiff also claims that Houston shared confidential information with Discovery. In September 2006, Plaintiff and Discovery discussed the possibility of jointly providing document storage and ROI services to a hospital chain. However, the deal did not materialize. Plaintiff claims that Houston then gave Discovery confidential information regarding its bid for the hospital's business. Plaintiff terminated Houston on December 1, 2006, and Houston began working for Discovery on December 4, 2006. Plaintiff claims that Houston's employment at Discovery violates his noncompete agreement.

Houston argues that Plaintiff's president, Ed Santangelo, was aware he was referring ROI business to Discovery, and approved of it. Houston also denies sharing confidential information.

Plaintiff seeks a preliminary injunction enjoining Houston from continuing his employment with Discovery or any other competitor of Plaintiff, from disclosing Plaintiff's confidential information, and from doing business with customers of Plaintiff, unless Houston is engaged in a

business that is noncompetitive with Plaintiff.

## II. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
>
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
>
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
>
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The standard for preliminary injunction is not a rigid and comprehensive test; the four factors are elements to be balanced, not prerequisites that must be satisfied. "[T]hese factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc*. 963 F.2d 855, 859 (6th Cir. 1992).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

Michigan law provides that:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration,

> geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

M.C.L. § 445.774a.

The main issue at this stage is whether the ROI work Houston is doing for Discovery violates the noncompete agreement. The relevant portion of the agreement, section 8(c), reads as follows:

> "[T]o Compete" and "to Compete with Company" both mean to engage in the same or similar business as the Company in any manner whatsoever, including competing as a proprietor, partner, investor, shareholder, director, officer, employee, consultant, independent contractor, or otherwise, within the North American continent. For the purposes of this Section 8 of the Employment Agreement, competitors are entities that design and implement record management programs and/or provide document scanning services and Teleradiology services. Such entities engage in any of the following activities within the healthcare industry:
>
> (i) Design, implementation and management of record and file management systems;
>
> (ii) Design, implementation and management of scanning systems;
>
> (iii) The clerical and management outsourcing of Radiology and HIM Department file rooms and onsite clerical operations;
>
> (iv) Design, implementation and management of Record Storage Facilities;
>
> (v) Design, cleanup and correction of Hospital databases;
>
> (vi) Design, implementation and management of file reorganization and conversion services;
>
> (vii) Design, implementation and management of transitioning a hospital or business from a manual system to an electronic system; and
>
> (viii) Development of document and/or film scanning hardware or software.
>
> (ix) The provision of Teleradiology services.

Plaintiff's Exh. 1

Plaintiff argues that the phrase "record management programs" was intended to cover services such as ROI, and thus Houston's employment with Discovery violates the noncompete agreement.

However, Houston argues that the phrase "record management programs" does not encompass the ROI services performed by Discovery. Houston notes that Plaintiff's core business is the off-site storage of physical records for large health care entities such as hospitals. In contrast, Discovery is not engaged in the off-site storage of physical records. When performing its ROI services, Discovery retrieves the medical records on-site, distributes the records, and submits an invoice for the request. Houston also argues that Plaintiff did not provide ROI services while he was employed there, and thus the noncompete agreement cannot be read encompass ROI services.

In response, Plaintiff notes that it has always provided the front-end side of ROI services, the location and selection of the medical records. Plaintiff also argues that it began offering full ROI services before Houston began his employment with Plaintiff in July 2005. Plaintiff has submitted a proposal it made to provide ROI services to a client in April 2005. Thus, the fact that Plaintiff was soliciting ROI business when Houston began his employment with Plaintiff bolsters the conclusion that the noncompete agreement was intended to cover ROI services.

Furthermore, Houston's argument that the noncompete agreement only covers the off-site storage of medical records is not supported by the language of the agreement. Section 8(c)(iii) defines one type of competitive activity as "[t]he clerical and management outsourcing of Radiology and HIM [health information managment] Department file rooms and onsite clerical operations." Plaintiff's Exh. 1. The phrase "onsite clerical operations" is reasonably interpreted to encompass ROI services.

The Court finds that the competitive activity forbidden by the noncompete agreement includes ROI services. Thus, Plaintiff has shown a likelihood of success on the merits.

**B. Irreparable Harm to Plaintiff**

Plaintiff argues that Houston's employment with Discovery, in violation of his noncompete agreement, will deprive it of a legitimate competitive advantage, and the harm will be difficult to quantify. The Court agrees; courts have routinely held that the loss of a competitive advantage results in irreparable harm. *See Superior Consulting Co. v. Walling*, 851 F. Supp 839 (E.D. Mich. 1994).

**C. Irreparable Harm to Others**

Houston argues he will suffer substantial economic harm if he is prevented from working from Discovery. However, Houston freely entered into the contract containing the noncompete agreement. Furthermore, Houston's economic damage could be quantified, and is thus not irreparable, unlike the damage that would be suffered by Plaintiff if Houston continued to violate the noncompete agreement.

**D. Impact on the Public Interest**

The public has an interest in the enforcement of valid employment contracts. *Superior Consulting*, 858 F. Supp at 848.

**E. Security Requirement**

The Court recognizes that if the noncompete provision is eventually found to be invalid, or not applicable to Houston's employment with Discovery, the preliminary injunction will cause Houston significant economic hardship. Thus, the Court will order Plaintiff to post a surety bond in the amount of $100,000.

## IV. CONCLUSION

After consideration of the four factors, the Court finds that they weigh in favor of Plaintiff. Thus, the Court will GRANT Plaintiff's motion for preliminary injunction. The Court hereby ORDERS that Houston is enjoined from:

1. Working for Discovery or any other competitor of Plaintiff;
2. Disclosing Plaintiff's confidential information; and
3. Doing business with customers of Plaintiff, unless Houston is engaged in a business that is noncompetitive with Plaintiff.

This injunction shall remain in effect until further order of the Court.

The Court ORDERS that Plaintiff post a surety bond in the amount of $100,000.

**IT IS SO ORDERED.**

**S/Lawrence P. Zatkoff**

**LAWRENCE P. ZATKOFF**

**UNITED STATES DISTRICT JUDGE**

**Dated: January 15, 2007**

**CERTIFICATE OF SERVICE**

**The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 15, 2007.**

**S/Marie E. Verlinde**

**Case Manager**

**(810) 984-3290**